# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 21, 2014        Decided April 4, 2014

No. 13-5203

HANI SALEH RASHID ABDULLAH, DETAINEE, CAMP DELTA,
APPELLANT
RAMI BIN SAAD AL-OTEIBI, DETAINEE, CAMP DELTA,
APPELLEE
YOSRA SALEH RASHID ABDULLAH, NEXT FRIEND OF HANI
SALEH RASHID ABDULLAH,
APPELLANT

v.

BARACK HUSSEIN OBAMA, PRESIDENT OF THE UNITED STATES,
ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-00023)

*Stephen M. Truitt* argued the cause for the appellant. *Charles H. Carpenter* was on brief.

*Sharon Swingle*, Attorney, United States Department of Justice, argued the cause for the appellees. *Stuart F. Delery*, Assistant Attorney General, and *Dana L. Kaersvang*, Attorney, were on brief.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH, with whom *Circuit Judge* HENDERSON joins.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Hani Saleh Rashid Abdullah (Abdullah) is a Yemeni national who has been detained by the United States at the United States Naval Station Guantanamo Bay (Guantanamo) since 2002 as an enemy combatant. In 2005, Abdullah filed a petition for a writ of habeas corpus in the United States District Court for the District of Columbia challenging his detention. Abdullah eventually sought preliminary injunctive relief in 2010, when he asked the court to enjoin the United States from holding him in violation of a 1946 executive agreement between Yemen and the United States (Yemen Agreement or Agreement). The district court denied his motion. For the reasons that follow, we affirm.

**I**

Abdullah's motion for a preliminary injunction recounts that Abdullah traveled from Yemen to Afghanistan in the months before September 11, 2001, to attend a terrorist "training camp." Mot. for Prelim. Inj. 7, *Abdullah v. Obama*, Civ. No. 05-0023 (D.D.C. Oct. 8, 2010). Abdullah left the camp following the September 11, 2001 attacks to defend an airstrip in southern Afghanistan against the impending United States invasion. In December 2001, Abdullah abandoned his post at the airstrip and fled to nearby Pakistan. Pakistani authorities arrested Abdullah in Karachi, Pakistan, on September 11, 2002, and he was transferred to United States custody shortly thereafter. After brief stints of detention in

Kabul and at the Bagram Airfield Military Base, both locations in Afghanistan, the United States moved Abdullah to Guantanamo in October 2002. Abdullah remains detained at Guantanamo as an enemy combatant pursuant to the Authorization for Use of Military Force (AUMF), Pub. L. No. 107-40, 115 Stat. 224, 224 (2001), which confers on the President the authority to detain enemy combatants "for the duration of the particular conflict in which they were captured." *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion); *id.* at 588-89 (Thomas, J., dissenting); *see also Boumediene v. Bush,* 553 U.S. 723, 733 (2008); *Janko v. Gates*, 741 F.3d 136, 138 (D.C. Cir. 2014); *Maqaleh v. Hagel*, 738 F.3d 312, 317 (D.C. Cir. 2013).

On January 7, 2005, Abdullah petitioned the United States District Court for the District of Columbia for habeas corpus relief. Although the United States Supreme Court has held that a Guantanamo detainee can petition for habeas corpus relief in federal court, *see Boumediene*, 553 U.S. at 771 (Suspension Clause, Art. I, § 9, cl. 2, "has full effect at Guantanamo Bay"), the district court did not act on Abdullah's petition. Abdullah then sought preliminary injunctive relief. In his motion, Abdullah asserted that he has been indefinitely detained by the United States in violation of the Yemen Agreement, under which he claims protection as a Yemeni national. The Yemen Agreement provides, in relevant part, that

> Subjects of His Majesty the King of the Yemen in the United States of America and nationals of the United States of America in the Kingdom of Yemen shall be received and treated in accordance with the requirements and practices of generally recognized international law.

Agreement between the United States of America and the Kingdom of Yemen respecting friendship and commerce, art.

III, May 4, 1946, 60 Stat. 1782. According to Abdullah, the Yemen Agreement incorporated the Third Geneva Convention, Article 87 of which provides:

> [p]risoners of war may not be sentenced by the military authorities and courts of the Detaining Power to any penalties except those provided for in respect of members of the armed forces of the said Power who have committed the same acts.

Geneva Convention Relative to the Treatment of Prisoners of War (Third Geneva Convention), art. 87, Aug. 12, 1949, 6 U.S.T. 3316. Abdullah argued that, because the Uniform Code of Military Justice does not provide for indefinite detention as punishment for members of the United States Armed Forces, his indefinite detention is contrary to Article 87 and, hence, the Yemen Agreement. Abdullah also alleged that his conditions of confinement at Guantanamo violate the Third Geneva Convention because he is not permitted to purchase personal items, family and friends are not allowed to send him food or clothing, detainees cannot choose representatives to air their grievances to their Guantanamo custodians and copies of the Geneva Convention are not posted in prominent places.

For relief, Abdullah requested an order "restraining respondents from continuing to detain him indefinitely," Mot. for Prelim. Inj. 1, but he later clarified in his reply to the Government's opposition to his motion that he did not seek immediate release. Instead, Abdullah sought "an injunction prohibiting [the Government] from detaining him in violation of the express terms of [the Yemen Agreement]." Reply in Supp. of Mot. for Prelim. Inj. 1-2, *Abdullah v. Obama*, Civ. No. 05-0023 (D.D.C. Jan. 3, 2011). Although Abdullah did not expressly ask the court to enjoin his allegedly unlawful conditions of confinement, his request for full compliance with

the Yemen Agreement and, consequently, the Third Geneva Convention, appeared to encompass such relief.[1]

Abdullah next filed a mandamus petition with this Court on May 14, 2013, seeking to compel the district court to decide his motion. One week later, the district court denied Abdullah's motion for preliminary relief.[2] The court concluded that, even if the Yemen Agreement provided a basis for relief in Abdullah's underlying habeas proceeding, Abdullah did not meet the other requisites for preliminary injunctive relief—that he was likely to suffer irreparable injury in the absence of relief and that the balance of equities and public interest weighed in his favor. *See Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011). Specifically, the court found that "[i]f Abdullah seeks pre-adjudication release," he has not "shown a lesser harm to the respondents if they cannot regain his custody should habeas be ultimately found unwarranted, or likewise that the public interest would favor the release now on an as-of-yet unadjudicated habeas claim." Order 5, *Abdullah v. Obama*, Civil No. 05-0023 (D.D.C. May 21, 2013). "If Abdullah does not seek pre-adjudicative release," the court continued, "he has not explained what irreparable injury he faces outside of the injuries addressed by

---

[1] Abdullah also sought an order "enjoining respondents' wrongful and discriminatory refusal to repatriate Yemen subjects." Mot. for Prelim. Inj. 1. The ban on the transfer of detainees to Yemen has since been lifted, however, and Abdullah does not raise this issue on appeal. *See* Remarks of President Barack Obama, The White House (May 23, 2013), *available at* http://www.whitehouse.gov/the-press-office/2013/05/23/remarks-president-barack-obama.

[2] Once the district court denied the motion, we dismissed the mandamus petition as moot.

the merits of [the] underlying habeas petition." [3]   *Id.*
Abdullah timely appealed.

## II

"A preliminary injunction is 'an extraordinary remedy that
may only be awarded upon a clear showing that the plaintiff is
entitled to such relief.' "   *Sherley*, 644 F.3d at 392 (quoting
*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22
(2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972
(1997) ("[A] preliminary injunction is an extraordinary and
drastic remedy, one that should not be granted unless the
movant, *by a clear showing*, carries the burden of persuasion."
(quotation marks omitted)).   "A plaintiff seeking a
preliminary injunction must establish [1] that he is likely to
succeed on the merits, [2] that he is likely to suffer irreparable
harm in the absence of preliminary relief, [3] that the balance
of equities tips in his favor, and [4] that an injunction is in the
public interest." [4]   *Aamer v. Obama*, 742 F.3d 1023, 1038
(D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (quoting
*Winter*, 555 U.S. at 20)) (quotation marks omitted).   "When
seeking a preliminary injunction, the movant has the burden to

---

[3] The district court did not separately address Abdullah's
request for injunctive relief addressing his conditions of confinement
but it denied Abdullah's motion in its entirety.

[4] Abdullah argues that the traditional four-part preliminary
injunction test does not apply in this case because the Supreme Court
did not apply the test in *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006).
In *Hamdan*, the Court ruled on a habeas petition and thus had no
occasion to consider or apply the preliminary injunction factors.
*See id.* at 567, 571-72.   In addition, as our recent decision in *Aamer
v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014), makes plain, the
traditional four-factor preliminary injunction test, unsurprisingly,
applies to Guantanamo detainees.   *See id.* at 1038 (applying
four-factor test).

show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). We review the district court's balancing of the preliminary injunction factors for abuse of discretion and review questions of law underlying the district court's decision *de novo*. *Aamer*, 742 F.3d at 1038 (citing *Sherley*, 644 F.3d at 393).

We first clarify the relief Abdullah seeks. Although his motion sought an order "restraining respondents from continuing to detain him indefinitely," Mot. for Prelim. Inj. 1, Abdullah insists that he does not seek an immediate release from detention, Appellant's Br. 17, *Abdullah v. Obama*, No. 13-5203 (D.C. Cir. Aug. 30, 2013); *see also* Reply in Supp. of Mot. for Prelim. Inj. 1-2. It appears that instead he seeks (1) a declaration that the United States cannot "hold [him] *forever*, notwithstanding the state of 'hostilities' and at the pleasure of his captors," Reply Br. 6, *Abdullah v. Obama*, No. 13-5203 (D.C. Cir. Nov. 21, 2013), and (2) an order enjoining violations of the Third Geneva Convention regarding his conditions of confinement.[5] Abdullah's opening brief fails to explicate the conditions of confinement that allegedly violate the Third Geneva Convention but in his reply brief he submits that the United States violates the Convention on a daily basis by preventing Guantanamo detainees from selecting a representative to voice their complaints to authorities, by denying them access to packages sent to them from family members and friends and by failing to publish the Geneva Convention in prominent places at Guantanamo.

---

[5] In *Aamer*, we clarified that "a [detainee] may, in a federal habeas corpus petition, 'challenge the conditions of his confinement.'" 742 F.3d at 1038 (quoting *United States v. Wilson*, 471 F.2d 1072, 1081 (D.C. Cir. 1972)). *Aamer* also made clear that a detainee can challenge his conditions of confinement by seeking preliminary injunctive relief. *See id.* at 1038-1044.

In support of his request for declaratory relief, Abdullah argues only that he is being "indefinitely detained" in violation of the Yemen Agreement. Abdullah's notion that he is indefinitely detained stems from his unconfirmed belief that the Guantanamo Review Task Force, convened by executive order in 2009 to classify Guantanamo detainees, designated him as "too dangerous to transfer but not feasible for prosecution." Appellant's Br. 2-3; *see* Final Report at ii, Guantanamo Review Task Force (Jan. 22, 2010), *available at* http://www.justice.gov/ag/guantanamo-review-final-report.pdf. Abdullah renews his claim that his detention violates the Yemen Agreement because the Agreement incorporates provisions of the Third Geneva Convention that bar indefinite detention.[6] He does not, however, contest the factual basis of his detention.

Abdullah has not made a "clear showing" that he is entitled to the requested declaration. *Sherley*, 644 F.3d at 392. Even accepting *arguendo*, first, his claim that indefinite detention violates the Yemen Agreement and, second, that he may enforce the protections of the Agreement in court, he has not demonstrated he is likely to succeed on his habeas petition because he has not shown that *his* detention is indefinite or otherwise illegal. Contrary to Abdullah's assertions, the

---

[6] Abdullah also argues that the Yemen Agreement incorporates Articles 9 and 14 of the International Covenant on Civil and Political Rights (ICCPR). We do not consider this argument because it was not raised below. *See District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal."). Nor do we consider Abdullah's claim that "international law" protections are incorporated in American military regulations as that argument was also not raised in district court. *See id.*

Government does not claim the right to detain him indefinitely but instead only "for the duration of hostilities." Appellees' Br. 17, *Abdullah v. Obama*, No. 13-5203 (D.C. Cir. Oct. 31, 2013). And, as noted, the AUMF permits the President to detain enemy combatants "for the duration of the particular conflict in which they were captured." *Hamdi*, 542 U.S. at 518 (plurality opinion); *id.* at 588-89 (Thomas, J., dissenting); *see also Boumediene*, 553 U.S. at 733; *Janko*, 741 F.3d at 138; *Maqaleh*, 738 F.3d at 317. Further, a plurality of the Supreme Court has recognized, as have we, that such detention is sanctioned by international law. *See Hamdi*, 542 U.S. at 518 ("The capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war.' " (quoting *Ex parte Quirin*, 317 U.S. 1, 28, 30 (1942)); *id.* at 520 ("It is a clearly established principle of the law of war that detention may last no longer than active hostilities." (citing Third Geneva Convention, art. 118, 6 U.S.T. 3316 ("Prisoners of war shall be released and repatriated without delay after the cessation of active hostilities."))); *Al-Bihani v. Obama*, 590 F.3d 866, 874 (D.C. Cir. 2010) (Third Geneva Convention "codif[ies] what common sense tells us must be true: release is only required when the fighting stops"). Abdullah was captured during the conflict in Afghanistan, and it is undeniable that the conflict persists. *See Maqaleh*, 738 F.3d at 330 (political branches have exclusive authority to mark end of conflicts and neither has indicated Afghanistan conflict has ended). Absent a challenge to the *fact* of his detention on appeal, we can only conclude, then, that the *duration* of Abdullah's detention is consistent with the AUMF and with international law and, consequently, that he is unlikely to succeed on his underlying habeas petition.[7]

---

[7] The fact that Abdullah is not "indefinitely" detained casts doubt on whether the declaratory relief he seeks is even cognizable

Nor has Abdullah demonstrated that the remaining preliminary injunction factors weigh in his favor. To begin with, Abdullah has forfeited any argument related to irreparable injury, the balance of equities and the public interest because he did not address these factors until his reply brief. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (argument raised for first time in reply brief is forfeited). But even if Abdullah had not forfeited his arguments, it is plain that none of the remaining factors supports the requested relief. Most notably, Abdullah has not shown that he will suffer an irreparable injury if the Court withholds a declaration proscribing indefinite detention. A declaration prohibiting Abdullah's indefinite detention would have no practical effect because the Government plans to detain him not indefinitely but, under the AUMF, until hostilities in Afghanistan conclude. *See supra* at p. 9. Abdullah concedes as much in his opening brief. *See* Appellant's Br. 3-4.

Abdullah's request for relief enjoining his allegedly unlawful conditions of confinement has also been forfeited. Abdullah's opening brief presses this request for injunctive relief with only the bare and conclusory assertion that "Respondents are now, and have been for a decade, violating sections 3, 25, 70-72, and 78-79" of the Third Geneva Convention. Appellant's Br. 16. He does not fully explain the nature of the alleged violations until his reply brief. His efforts fail to preserve the claim. *See Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (if party's argument consists of "single, conclusory statement," argument is forfeited); *accord N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to mention a

---

—that is, a declaration prohibiting Abdullah's indefinite detention does not redress anything as he is not being detained indefinitely.

possible argument in the most skeletal way, leaving the court to do counsel's work." (quotation marks omitted)).  Moreover, Abdullah does not argue in his opening brief that the irreparable injury, balance-of-equities and public interest prongs warrant granting the injunction, with the result that Abdullah has forfeited his request for injunctive relief on these bases as well.  *See Kempthorne*, 530 F.3d at 1001; *see also Davis*, 571 F.3d at 1292 ("[T]he movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.").

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, concurring, with whom HENDERSON, *Circuit Judge*, joins:

I concur in the court's opinion but if the slate were clean I would be with Judge Williams and would hold that a habeas corpus petition cannot be used to challenge conditions of confinement at Guantanamo. *See Aamer v. Obama*, 742 F.3d 1023, 1044 (D.C. Cir. 2014) (Williams, J., dissenting).