# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 31, 2025        Decided August 19, 2025

No. 23-7175

KLEO AG, A STOCK CORPORATION FORMED UNDER THE LAWS
OF THE PRINCIPALITY OF LIECHTENSTEIN,
APPELLANT

v.

RIVADA NETWORKS, INC., A DELAWARE LIMITED LIABILITY
COMPANY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01664)

———

*David M. Parker* argued the cause for appellant. With him on the briefs was *Torsten M. Kracht*. *Elbert Lin* entered an appearance.

*Daryoush Behbood* argued the cause for appellee. On the brief was *Peter H. White*.

Before: PILLARD and GARCIA, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

Opinion concurring in part and dissenting in part filed by *Senior Circuit Judge* RANDOLPH.

GARCIA, *Circuit Judge*:  KLEO AG, a satellite company, sued its competitor, Rivada Networks, Inc., for defamation. The district court dismissed the lawsuit, concluding that KLEO was required, but failed, to adequately allege that the challenged statements caused it specific harms.  We affirm the district court's ruling that the complaint needed to identify KLEO's harms and explain how Rivada's statements caused them.  But unlike the district court, we conclude that the complaint adequately did so.  Accordingly, we reverse in part.

**I**

**A**

At the motion-to-dismiss stage, we accept the truth of the factual allegations in KLEO's complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

KLEO AG is a corporation based in Liechtenstein.  It is working to develop a constellation of low-Earth-orbit satellites that will support a global data network.  Satellites rely on the radio-frequency spectrum to transmit information.  To avoid signal interference, international regulations prohibit satellite operators from accessing the radio-frequency spectrum unless they obtain usage rights from their national governments.

In 2018, the Liechtenstein government allocated radio-frequency rights to another company, TRION AG.  The Liechtenstein government also approved a contract under which TRION licensed its usage rights to KLEO.  To comply with regulatory requirements for holders of radio-frequency rights, KLEO successfully launched and operated two test satellites the following year.

One of KLEO's competitors, Rivada Networks, Inc., wanted KLEO's frequency rights for itself. To that end, Rivada commenced a corporate takeover of TRION in 2021. As a result of the takeover, TRION's board members voted to terminate the contract licensing the company's radio-frequency rights to KLEO. TRION eventually transferred those rights to Rivada. KLEO disputed the legality of those actions, and the purported cancellation of KLEO's contract with TRION remains the subject of ongoing litigation and arbitration in Europe.

About three weeks after TRION's vote, Rivada's Chairman and CEO, Declan Ganley, appeared for an interview on Space Café Radio, a podcast for satellite-industry insiders. Ganley stated during the interview that KLEO "only ever had a provisional and subjective" license to use the radio-frequency spectrum, that KLEO "no longer ha[d] the use of [its] license[]," and that any usage rights KLEO once enjoyed had "been terminated" and "amputated from the filings." J.A. 86 ¶ 40. Ganley further claimed that KLEO's plan all along had been to move control of the satellite network to China:

> There w[as] a group of Chinese government-backed shareholders . . . . [L]et's just say that there was absolutely no way in the world that this plan of theirs was credible or was capable of being executed upon, and furthermore, there are some very strict rules with regard to moving, or de facto moving, [a license for] constellation rights from one place to another. . . . These are European filings and it was pretty obvious, not just obvious, but actually categorically stated that the plan was to move these to China, and while there would've been, if you like, a sort of front organization left remaining in

> Germany, everything else would've been moved . . . .

*Id.* (last alteration in original).

The podcast aired during the second day of a four-day satellite conference in Washington, D.C. The conference bills itself as the most widely attended event each year among executives and customers in the satellite industry. The podcast was also distributed on an authoritative news platform that professionals across the industry followed.

During the conference, manufacturers approached KLEO to express doubt about its satellite network's viability. Some of those same manufacturers then refused to partner with KLEO in its planned satellite project.

**B**

KLEO sued Rivada for defamation under District of Columbia law (as well as for tortious interference with contract, though it later abandoned that claim). The district court had diversity jurisdiction over the suit. *See* 28 U.S.C. § 1332(a)(2).

To state a defamation claim under D.C. law, a plaintiff must allege "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *See Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1172 n.2 (D.C. 1997) (quoting *Prins v. Int'l Tel. & Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991)). This case concerns the final element, which (as the quoted language suggests) can be pleaded in two ways. First, a plaintiff can allege that the

challenged statements were so inherently harmful that they were defamatory per se, in which case no additional showing of damages is required. *See Farnum v. Colbert*, 293 A.2d 279, 281–82 (D.C. 1972). Second, a plaintiff can allege that the statements caused "special damages," a term that "refers to actual pecuniary loss." 1 *Law of Defamation* § 1:15 (2d ed. May 2025 update). Under Federal Rule of Civil Procedure 9(g), special damages "must be specifically stated."

Rivada moved to dismiss KLEO's complaint for failure to state a claim. KLEO twice amended the complaint, and each time it did so, Rivada filed a renewed motion. Rivada argued that KLEO had not plausibly claimed any injury from the podcast. KLEO responded that Ganley's statements were defamatory per se and that, in any event, the second amended complaint (hereinafter the "complaint") adequately pleaded special damages. KLEO pointed to several allegations in the complaint detailing the harms it sustained from Ganley's interview, including the costs of repairing its relationships with satellite manufacturers and establishing new partnerships.

The district court granted each of Rivada's motions and ultimately dismissed KLEO's lawsuit with prejudice. *See KLEO AG v. Rivada Networks, Inc.*, 2023 WL 7921969, at *1 (D.D.C. Nov. 16, 2023). Assuming without deciding that Ganley's statements were false and defamatory, the court ruled that they were not defamatory per se. The district court then determined that KLEO had not pleaded special damages because the complaint did not adequately allege a causal tie between Ganley's statements and KLEO's losses.

KLEO now appeals.

**II**

We review the district court's dismissal of KLEO's suit de novo. *See Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024).

"In evaluating a Rule 12(b)(6) motion, [we] must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

On appeal, KLEO reprises its argument that it has stated a defamation per se claim and that, in the alternative, it has adequately pleaded special damages. We affirm the district court's determination that Ganley's statements did not amount to defamation per se. We hold, however, that KLEO adequately pleaded one theory of special damages and remand for further proceedings on that issue.

**A**

Only "statements about extreme subjects" are considered defamatory per se. *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (per curiam). That category includes "statements imputing to a person a criminal offense; a loathsome disease; matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct." *Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978). Statements like those are "virtually certain" to damage someone's reputation, so a defamation plaintiff need not separately establish that the statements caused actual harm. *Id.* at 262.

KLEO insists that Ganley attributed to it a matter adversely affecting its fitness for the satellite industry in two ways: first, by communicating that KLEO lacked the radio-frequency rights needed to operate its satellite system; second, by claiming that KLEO "planned to transfer control of [its satellite] network to China." Appellant's Brief 9. Neither argument succeeds.

To start, it was not defamatory per se for Ganley to claim that KLEO had lost its radio-frequency rights. Ganley's statements described a business deal that fell through, not anything so "extreme" as to constitute defamation per se. *Smith*, 886 F.3d at 128.

KLEO resists that basic point by relying on cases about individual professionals, such as doctors and lawyers, who sued for defamation over allegedly false statements that they had lost their licenses, were in danger of losing their licenses, or were incapable of performing the work of their trade. *See* Appellant's Brief 18–20 (citing *Ingber v. Ross*, 479 A.2d 1256, 1264 (D.C. 1984); *Krishnan v. Blueprint Healthcare LLC*, 2021 WL 4255359, at *8 (D. Mass. Sept. 17, 2021); *Cretella v. Kuzminski*, 640 F. Supp. 2d 741, 763 (E.D. Va. 2009); *Mimms v. CVS Pharmacy, Inc.*, 2017 WL 25456, at *13 (S.D. Ind. Jan. 3, 2017), *rev'd in part on other grounds*, 889 F.3d 865 (7th Cir. 2018); and *Elibol v. Berkshire-Hathaway, Inc.*, 747 N.Y.S.2d 649, 650 (2002)). Courts found the statements at issue in those cases defamatory per se, and KLEO submits that the same reasoning should control here: After all, KLEO says, Ganley said it "lack[ed] a license necessary to conduct its business." *Id.* at 19.

But a statement alleging the lack of a license does not amount to defamation per se in all settings. The unifying theme of the cases KLEO cites is that they involved lines of work where such an accusation tends to seriously damage a professional's reputation. For example, a statement that a doctor or a lawyer no longer has a license can communicate that she has engaged in "illegal or unethical behavior," *Mimms*, 2017 WL 25456, at *9, or that she is so "incompetent" as to fall woefully short of basic professional standards, *Cretella*, 640 F. Supp. 2d at 763; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 112, at 791–92 (5th ed. 1984) (explaining that statements may be defamatory per se if they

portray the plaintiff as "dishonest, incompetent," or otherwise having traits "incompatible with the proper conduct" of her trade (footnotes omitted)). Those cases make sense because the types of professionals they address—doctors, lawyers, and the like—generally lose their licenses as a form of discipline for misconduct.

The allegations here are materially different. Ganley stated that KLEO had lost a contract to use the radio-frequency rights allocated to TRION. That statement does not inherently impute to KLEO any professional malfeasance or ineptitude. Contracts can fall through for any number of reasons, some more benign than others. Indeed, the alleged defamatory statements explicitly included such a reason: Ganley said KLEO lost its rights because his company had "stepped in" and "terminated" the contract KLEO had with TRION. J.A. 86 ¶ 40. Ganley never indicated that KLEO was "not capable of" operating a satellite system, only that KLEO needed to obtain another contract for radio-frequency rights before it could do so. *Ingber*, 479 A.2d at 1264 (emphasis omitted).

KLEO also asserts that questioning a competitor's solvency can constitute defamation per se. *See* Appellant's Brief 17 (citing Restatement (Second) of Torts § 573 cmt. c (A.L.I. 1977 Supp. Oct. 2024)). Even if that is so, KLEO never actually argues that Ganley cast it as insolvent. The closest KLEO comes is its repeated reference to an allegation in the complaint that, according to one foreign tribunal, "the withdrawal of these [radio-frequency] rights would 'destroy the existence' of KLEO." J.A. 84 ¶ 33. But that quotation—which postdated the podcast by about seven months—does not retroactively infuse Ganley's statements with the same meaning.

The complaint elsewhere claims that Ganley's statements about the loss of frequency rights were defamatory per se

insofar as they discouraged investors and potential business partners "from dealing with KLEO." J.A. 89 ¶ 41(ii). But on that logic, any statement tending to cause unease among the investing public could constitute defamation per se. KLEO would have us broaden the category considerably, forgetting that it is "reserved for statements about extreme subjects." *Smith*, 886 F.3d at 128.

KLEO's second theory of defamation per se fares no better. KLEO zeroes in on Ganley's statements that "the plan was to move [the satellite network] to China," and that "there would've been . . . a sort of front organization left remaining in [Europe]." J.A. 86 ¶ 40.

On appeal, KLEO asserts that, through these remarks, Ganley accused it of "deceiv[ing] European regulators." Appellant's Brief 1. The most cogent gloss on KLEO's argument looks something like this: A European regulator would not have approved a company based in China to use the radio-frequency spectrum. Ganley implied that KLEO established a European presence for the sole purpose of duping a European regulator into granting it frequency rights. All along, Ganley said, KLEO planned to shift control of the satellite network to China while leaving only a nominal presence in Europe.

In theory, KLEO is correct that a statement impugning someone's "honesty in business" can be defamatory per se. Restatement (Second) of Torts § 573 (1977) cmt. c (A.L.I. 1977 Supp. Oct. 2024); *see also Golden Palace, Inc. v. Nat'l Broad. Co.*, 386 F. Supp. 107, 109 (D.D.C. 1974). The problem for KLEO is that Ganley's statements are far too vague to support the meaning KLEO now seeks to ascribe to them. Ganley did not even mention European regulators, much less state that KLEO was conniving to deceive them. And the complaint, even after KLEO amended it multiple times, does

not allege other facts that might fill in the gaps. For example, the complaint does not identify which entity was purportedly deceived, nor why it would have been impermissible for KLEO to move control of the satellite network to China. And KLEO's solitary and conclusory assertion that Ganley accused it of "fraud and deception" is no substitute for well-pleaded facts explaining how that is so. J.A. 95 ¶ 50. At bottom, KLEO asks us to read an accusation that KLEO was scheming to deceive European regulators into Ganley's remarks without providing the context we would need to make that interpretive leap.

KLEO also argues that Ganley's statements about China were defamatory per se because they "stok[ed] fears among investors, satellite manufacturers, and launch service providers that management of the project [would] be taken over by the Chinese government." Appellant's Brief 9 (first alteration in original) (quoting J.A. 87 ¶ 41(i)). But as we have explained, a statement is not defamatory per se just because it might shake stakeholder confidence.

In the end, Ganley left the podcast's listeners only with the impression that KLEO planned on conducting its business in China. That does not remotely meet the standards of a defamation per se claim.

**B**

With defamation per se off the table, the remaining question is whether KLEO has properly pleaded that Ganley's statements caused it special damages. Special damages encompass "those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct." 5A *Wright & Miller's Federal Practice & Procedure* § 1310 (4th ed. Supp. May 2025).

When "an item of special damage is claimed," Federal Rule of Civil Procedure 9(g) requires that it "be specifically

stated." As the district court correctly explained, a plaintiff pleading special damages as part of a defamation claim must identify a specific economic loss and "evidence of causation" linking that loss to the challenged statements. *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002). Rivada does not ask us to reconsider the district court's ruling that KLEO's complaint detailed several specific economic losses. Instead, the parties dispute whether the complaint adequately pleaded a causal tie between Ganley's statements and KLEO's damages.

We will assess that question by asking, as the district court did, whether the causal relationship KLEO posits is supported by "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To be sure, some of our pre-*Twombly* cases describe Rule 9(g) as imposing a "heightened pleading standard" to allegations of causation as compared to the generally applicable standard under Rule 8 for stating a claim. *Browning*, 292 F.3d at 245; *see also Fowler v. Curtis Publ'g Co.*, 182 F.2d 377, 379 (D.C. Cir. 1950). But the parties both assume that the *Twombly* standard applies to measure KLEO's causation allegations and that we should draw all reasonable inferences in KLEO's favor at the motion-to-dismiss stage, notwithstanding their fleeting references to Rule 9(g)'s "heightened pleading standard." *See* Appellant's Brief 16, 25; Appellee's Brief 13–14, 26–27. So did the district court. *See KLEO AG*, 2023 WL 7921969, at *1–2; *id.* at *4–5. We will do the same.

We conclude that KLEO has alleged a plausible causal connection between Ganley's statements and one category of special damages: costs related to KLEO's loss of business relationships with satellite manufacturers. The complaint specifically alleges that Ganley's statements caused KLEO to incur "at least €4,000 in travel expenses" to rebuild those

relationships and "secure [other] partnerships" to replace relationships that were beyond repair. J.A. 93 ¶ 42.[1]

The complaint tells the following story about how Ganley's statements caused those damages. KLEO was making progress toward commercializing its frequency rights, having launched and operated two test satellites, when Rivada initiated a corporate takeover that culminated in the purported termination of KLEO's contract with TRION. *See* J.A. 82 ¶ 22; J.A. 82–83 ¶¶ 26–29. Knowing how attuned the satellite industry was to the media, Ganley made his defamatory statements on the second day of the year's most important and widely attended conference in the industry, and on a podcast that the satellite community followed. *See* J.A. 85 ¶¶ 36–37. The podcast was then circulated on a well-respected platform for satellite-related news. *See id.* ¶ 38. Manufacturers began approaching KLEO "[d]uring" the conference with concerns "that KLEO's satellite project appeared likely to fail, or had already failed." J.A. 93 ¶ 42. Those same manufacturers have since refused to partner with KLEO. *See id.*

The sequence of events that KLEO describes is clear, logical, and factually grounded. And it gives rise to a natural

---

[1] The complaint identifies three other types of special damages: KLEO's loss of frequency rights, its loss of a prominent space consultant's services, and its loss of employees. The district court deemed the first two allegations plainly insufficient under Rule 9(g). *See KLEO AG*, 2023 WL 7921969, at *3 n.2 (finding KLEO's allegation about the space consultant "speculative and vague"); *id.* at *4 n.3 (noting that KLEO lost its frequency rights "*before* [the] allegedly defamatory statements"). KLEO does not challenge those aspects of the district court's ruling. Nor has KLEO offered any argument on appeal that the complaint adequately alleges how Ganley's statements caused it to lose employees. Any such argument is therefore forfeited. *See Abdullah v. Obama*, 753 F.3d 193, 199 (D.C. Cir. 2014).

inference that the companies refused to partner with KLEO because of Ganley's statements.

KLEO's complaint also compares favorably to others that courts have found to satisfy Rule 9(g). For example, in *Schoen v. Washington Post*, 246 F.2d 670 (D.C. Cir. 1957), we held that the plaintiff adequately pleaded special damages by alleging that he lost business relationships close on the heels of a defamatory news story. *Id.* at 672. The plaintiff alleged that his gross receipts declined after the story's publication, that the decrease "resulted solely and proximately from the [associated] damage to his good name and reputation," and that the story had caused three named persons to withdraw their business and other potential customers to withhold theirs. *Id.* at 671–72;[2] *see also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (deeming sufficient under Rule 9(g) a complaint that also relied on the sequencing of events). For its part, Rivada has not identified any decision finding similar allegations insufficient. In the cases Rivada relies on most heavily, the plaintiff "allege[d] no facts suggesting causation" whatsoever. *Browning*, 292 F.3d at 246; *see also Smith*, 886 F.3d at 128 (noting that complaint included only "a boilerplate recitation, unaccompanied by any factual detail"); *Fowler*, 182 F.2d 377, 379 (D.C. Cir. 1950) (similar). Unlike in those cases, the complaint here contains ample facts to suggest that Rivada carefully selected the time of the interview and the podcast that broadcast it to maximize the damage to KLEO's reputation,

---

[2] *Schoen* noted that even under Rule 9(g), a plaintiff need not plead a "causal relationship . . . with as great precision as might be possible or desirable." *Schoen*, 246 F.2d at 672. The dissent would dismiss *Schoen* as a relic of the "notice-pleading approach which *Twombly* has long since supplanted." Dissenting Op. 6 n.2. This court, however, has already considered and rejected the argument that *Schoen* merely applied a "notice pleading" standard. *See Browning*, 292 F.3d at 246.

that the participants in the conference heard Ganley's statements, and that the statements had their intended effect.

In concluding otherwise, the district court erred in four ways.

First, the district court found that the complaint was "unclear" about whether the manufacturers expressed their misgivings "before or after Rivada made its allegedly defamatory statements." *KLEO AG*, 2023 WL 7921969, at *4. The complaint states that the manufacturers voiced concerns to KLEO "[d]uring the" conference, without specifying when over the course of the conference's four days those encounters occurred. J.A. 93 ¶ 42. "Presumably," KLEO explains, "the district court [reasoned] that because Rivada's statement occurred on the second day of this conference, the manufacturers could have approached KLEO . . . on the first day, or earlier [on] the second day." Appellant's Brief 28.

Against the backdrop of the complaint's other well-pleaded allegations, KLEO is entitled to a reasonable inference that its conversations with manufacturers occurred after the podcast had already aired. The complaint, again, alleges that Ganley made his statements on day two of the four-day conference, and that manufacturers approached KLEO with concerns during the conference. It further alleges that "[t]he most immediate impacts of the [podcast] were felt in Washington, [D.C.]," J.A. 85 ¶ 39, and that "the purpose *and result*" of the podcast were "to discredit KLEO among its industry peers *who were attending the conference*," J.A. 78 (emphases added). The plain thrust of KLEO's allegations is that manufacturers approached it after hearing Ganley's statements, and the district court should have construed the complaint accordingly. To conclude otherwise, we would have to draw an inference *against* KLEO, which is not proper at this stage. *See Hettinga*, 677 F.3d at 476.

Second, the district court faulted the complaint for "vaguely alleg[ing] that KLEO lost business" without providing "specific dates." *KLEO AG*, 2023 WL 7921969, at *4. That "degree of detail" is unnecessary at the motion-to-dismiss stage. *Browning*, 292 F.3d at 246 (citation modified). KLEO's other factual allegations make out a sufficiently plausible causal chain to suggest that the manufacturers, in refusing to partner with KLEO, were acting on the concerns that they had mentioned during the conference. That is so regardless of the precise date the manufacturers declined to work with KLEO. At this early stage of the litigation, our inability to precisely discern the alleged lag time between the conference's end and KLEO's loss of business is not fatal to KLEO's defamation claim.

Third, the district court gave undue weight to a potential alternative explanation for KLEO's losses: TRION's purported termination of KLEO's usage rights, which preceded the conference by about three weeks. TRION's announcement, according to the district court, "support[ed] an inference that KLEO's business relationships suffered because of its loss of frequency rights, not because of Rivada's statements." *KLEO AG*, 2023 WL 7921969, at *4 n.3. The dissent reasons similarly. *See* Dissenting Op. 5.

The problem with that theory is that the complaint does not include any allegation that even supports an inference that the conference participants learned about TRION's purported cancellation of KLEO's frequency rights independently of Ganley's podcast interview. True, the complaint states that the satellite industry was monitoring "the ongoing arbitration and litigation" involving KLEO, Rivada, and TRION. J.A. 84 ¶ 34. But the only milestones in the litigation identified in the complaint all postdated the conference by several months. The most natural reading of the complaint, drawing all reasonable inferences in KLEO's favor, is that the conference participants

learned of the fallout with TRION from Ganley's podcast appearance.

Fourth and finally, the district court focused myopically on KLEO's allegations that, "[o]n information and belief," the special damages it sustained were "caused by Rivada's defamatory statements." J.A. 93–94 ¶¶ 42–43. The district court deemed these allegations conclusory and found that "KLEO has thus failed to plead causation." *KLEO AG*, 2023 WL 7921969, at *3. Once again, the dissent is in accord. *See* Dissenting Op. 3. But the conclusion does not follow from the premise. The one sentence alleging causation on information and belief may have been "boilerplate," *KLEO AG*, 2023 WL 7921969, at *3 (quotation omitted), but the point is that KLEO's *other* allegations, detailed above, lend factual support to its claims about causation. To take just one example, the complaint does not directly allege that manufacturers heard Ganley's remarks on the podcast. But it does allege that Ganley made the statements during the largest annual industry convention, J.A. 85 ¶ 36–37, that the statements were "distributed publicly and globally" through "a well-known and authoritative source for news within the close-knit satellite-communications industry," *id.* ¶ 38, and that the "most immediate impacts of the" statements were "felt" at the convention, *id.* ¶ 39. The presence of some conclusory allegations does not negate the combined force of other well pleaded factual contentions.

To be sure, the dissent makes a strong case that KLEO omitted from its complaint details that would have placed its claim on stronger footing. Although the matter is close, we conclude that when the complaint is read as a whole and reasonable inferences are drawn in KLEO's favor, KLEO has done enough to "nudge[]" its "claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

17

Accordingly, we hold that KLEO has adequately pleaded special damages under Rule 9(g), and that the district court erred by dismissing its defamation claim.

## III

The decision below is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, concurring in part and dissenting in part:

In this defamation action, satellite company KLEO AG asserts that a competitor, Rivada Networks, Inc., falsely impugned KLEO's business. I agree that the defamation per se theory and three of the four claimed "special damages" injuries fail, *see* Majority Op. 6, 12 n.1, and I accordingly join parts I and II.A of the majority opinion.

But my colleagues' otherwise admirable opinion falters in its analysis of KLEO's sole remaining injury: the loss of business partnerships. The complaint is replete with conclusory statements that Rivada is to blame, but it is bereft of any factual allegations actually showing a connection between the statements and the losses. Despite this insufficient pleading, the majority knits together unrelated facts to "tell[]" a "story" of causation—one KLEO left untold. Majority Op. 12. This storytelling exercise is not only inconsistent with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), but also contravenes the heightened pleading standard required by Federal Rule of Civil Procedure 9(g). I therefore would affirm in full.

## I.

To survive a motion to dismiss, Rule 9(g) requires "special damages" to be "specifically stated." Fed. R. Civ. P. 9(g).[1] As the majority agrees, this entails showing both a "specific economic loss and 'evidence of causation' linking that loss to

---

[1] This is a diversity of citizenship case, and the parties agree that the substantive law of defamation is that of the District of Columbia. But federal law provides the procedural rules for this case, including the pleading standards. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015); *see also Hanna v. Plumer*, 380 U.S. 460, 472 (1965); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010).

the challenged statements." Majority Op. 11 (quoting *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002)).

The majority believes that we measure the complaint against these elements by using the motion to dismiss standard from *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See* Majority Op. 11. If *Twombly* is the correct standard—more on that later—KLEO must provide evidence of causation by alleging "sufficient factual matter" to make its claim "plausible." *Iqbal*, 556 U.S. at 678 (second excerpt quoting *Twombly*, 550 U.S. at 570). While we "draw all reasonable inferences" in the plaintiff's favor, those inferences must themselves be "plausible" and supported by "sufficient facts." *Ho v. Garland*, 106 F.4th 47, 50–51 (D.C. Cir. 2024) (first excerpt quoting *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020)). And a reasonable inference requires something more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

While KLEO did claim a specific economic loss, the entirety of the complaint's pleading on causation is the following paragraph:

These defamatory statements caused specific harm to KLEO. After these statements, many satellite manufacturers have refused to partner with KLEO and KLEO Connect GmbH in the planned satellite project. During the DC SATELLITE Conference, some of these manufacturers expressed their belief that KLEO's satellite project appeared likely to fail, or had already failed. *On information and belief, the loss of these relationships was caused by Rivada's defamatory statements.* Further, the loss of these relationships has caused KLEO specific pecuniary harm, because KLEO has spent time and resources

> attempting to repair these relationships, and also to secure partnerships with other manufacturers, including at least €4,000 in travel expenses, and more to be later proven.

Second Am. Compl. ¶ 42 (J.A. 93) (emphasis added).

This level of pleading is inadequate. KLEO had to plead "evidence of causation." But only one sentence of the complaint actually bears on causation: "On information and belief, the loss of these relationships was caused by Rivada's defamatory statements." *Id.* The first three sentences simply describe the post-statement events and the nature of the injury, explaining that manufacturers refused to partner with KLEO and told it so; the last sentence quantifies the loss.

KLEO's bare assertion that Rivada "caused" the losses is not evidence—it is an unsupported "legal conclusion" we should not credit. *See Iqbal*, 556 U.S. at 678. *Twombly* and *Iqbal* require "sufficient factual matter" to make causation plausible, *id.*, but KLEO provided no factual matter whatsoever. It did not allege that its business partners heard Rivada's statements, or that they were influenced by the statements, or that they mentioned the statements in cutting ties with KLEO, or even that they changed their minds *after* the podcast was released. KLEO merely stated a legal conclusion—causation—"[o]n information and belief."

KLEO's invocation of "on information and belief" raises a further problem. In some cases, this type of bare-bones pleading is a "practical necessity," 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1224 (4th ed. 2025), since "the necessary information [may] lie[] within [the] defendants' control." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)). But plaintiffs in a

position to have "personal knowledge"—or, conversely, those lacking "sufficient data to justify interposing an allegation"—may not use "on information and belief" pleading to avoid alleging specific facts. Wright & Miller, *supra*, § 1224. And when Rule 9 is in play, still more detail is required: "on information and belief" pleadings must "be accompanied by a statement of the facts upon which the allegations are based." *Kareem*, 986 F.3d at 866 (quoting *Kowal*, 16 F.3d at 1279 n.3); *see also* Wright & Miller, *supra*, § 1224 (requiring, for "on information and belief" pleading in Rule 9 "special damages" cases, a statement of "the facts on which the pleader's belief is founded").

These principles further confirm the insufficiency of KLEO's allegations. The relevant information about causation is not within the defendant's control—on the contrary, KLEO is better positioned than Rivada to determine why its own business partners cut ties. In addition, in lieu of a statement of facts supporting its "information and belief," KLEO has supplied only a one-sentence legal conclusion. We have no basis for assuming that the plaintiff has information about causation that is reasonably supported by factual knowledge.

In recognition of the lack of any direct evidentiary allegation of causation, the majority falls back on inferences. In my colleagues' telling, KLEO was riding high until "Rivada initiated a corporate takeover," transferred essential radio-frequency licenses, and "made [the] defamatory statements," leading manufacturers to have "concerns" about KLEO's business. Majority Op. 12. KLEO's complaint thus provides a "story" which "gives rise to a natural inference" of causation. *Id.* at 12–13. But there is nothing "natural" about this inferential leap, and KLEO's allegations do not support it. The majority's hypothesis rests on the business partners reversing course near in time to the podcast, yet that temporal inference is

unsupported. The complaint contains no specific allegations about dates, attitudes before and after the podcast, or any other evidence connecting the statements and the injury. In lieu of that factual backing, the majority's narrative is just a *post hoc ergo propter hoc* assumption—the logical fallacy "meaning 'after this, therefore because of this.' A progression in time is necessary for a causal relationship, but it's not enough." David J. Hand, *The Improbabilty Principle: Why Coincidences, Miracles, and Rare Events Happen Every Day* 18 (2014).

In any event, the majority's recounting provides an obvious alternative: the termination of KLEO's access to radio frequencies. *See* Majority Op. 2–3, 12 (discussing KLEO's contract with another entity, TRION, for radio frequencies). My colleagues explain that the loss of this essential asset also preceded the business partners' "concerns 'that KLEO's satellite project appeared likely to fail.'" *Id.* at 12 (quoting J.A. 93 ¶ 42). And while the majority emphasizes that KLEO did not allege its business partners independently heard of the lost frequencies, *see id.* at 15, KLEO also did not allege they heard the podcast. Accordingly, the complaint contains nothing that would make the alleged defamatory podcast a more likely explanation, and *Iqbal* requires us to dismiss a complaint containing facts "'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The majority's choice to relax *Twombly* also breaks with our decision in *Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018). There, applying Rule 9(g) post-*Twombly*, we rejected a complaint containing the following one-sentence allegation about causation: "[a]s a direct and proximate result of Defendant Clinton's statements, [plaintiffs] have suffered pecuniary damage." *Id.* at 128 (first alteration in original). That unsupported assertion—similar to KLEO's pleading—was "a boilerplate recitation, unaccompanied by any factual detail," and

warranted dismissal. *Id.*[2]

## II.

There is an additional problem with the majority's opinion: *Twombly* is not the appropriate standard. "Special damages" pleading is governed by Rule 9(g)'s "heightened pleading standard," *Browning*, 292 F.3d at 245, not the typical Rule 8 requirement of a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2). Even if KLEO's complaint could pass muster under *Twombly*, it certainly could not survive Rule 9(g).

We have repeatedly held that Rule 9(g) requires a plaintiff to describe the claimed injury with "'particularity' and specify 'facts showing that such special damages were the natural and direct result' of the defendant's conduct." *Browning*, 292 F.3d at 245 (quoting *Fowler v. Curtis Publ'g Co.*, 182 F.2d 377, 379 (D.C. Cir. 1950)). In other words, instead of merely pleading evidence of causation under *Twombly*'s plausibility standards, a special damages plaintiff must state causation with "a good deal of particularity," describing "precisely in what way the special damage resulted from the spoken or written words." *Fowler*, 182 F.2d at 379.[3]

---

[2] The majority instead relies on *Schoen v. Washington Post*, 246 F.2d 670 (D.C. Cir. 1957), which held a defamation complaint was sufficient even though causation was "not alleged with as great precision as might be possible or desirable." *Id.* at 672. But *Schoen* emphasized that the plaintiff had "adequately notifie[d] both appellee and the court as to the nature of the claimed damages," *id.*, a notice-pleading approach which *Twombly* has long since supplanted.

[3] This heightened standard arises from the theory of "special damages." In contrast to a defamation per se claim where the slander is outrageous and damages are presumed, the common law was skeptical of defamation claims arising from less extreme statements.

Rule 9(g) is about eliminating flimsy lawsuits. It is not enough for plaintiffs to propose theories, conjectures, and hypotheses. Rule 9(g) demands an explanation, grounded in evidence. KLEO's complaint falls far short. Even if the majority's "natural inference[s]" of causation are permissible under *Twombly*, Majority Op. 12–13, Rule 9(g) makes clear that this is not sufficient for special damages. KLEO did not "specify" any "facts" to explain why the loss of its business relationships was the "natural and direct result" of Rivada's statements. And it did not explain "precisely in what way" its business counterparties were influenced by Rivada's statements.

Nor did Rivada forfeit an argument based on the Rule. Contrary to the majority's statement that the "parties both assume that the *Twombly* standard applies" and "[s]o did the district court," Majority Op. 11, both Rivada and KLEO explicitly refer to a heightened pleading standard in their briefs. *See* Appellant Br. 26 n.5 (mentioning "Rule 9(g)'s heightened pleading standard" (quoting *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019))); Appellee Br. 2, 10, 24, 27 (applying the "heightened pleading standard" of Rule 9(g)). The district court also understood that compliance with Rule 9(g) was at stake. As a result, the court applied "Rule 9(g)'s heightened pleading standard for special damages." *KLEO AG v. Rivada Networks, Inc.*, No. 22-cv-01664, 2023 WL 7921969, at *5 (D.D.C. Nov. 16, 2023). To be sure, the parties' general statements of the standard of review mention *Twombly*, but both parties acknowledge that Rule 9(g) requires something additional for special damages. That specificity is absent here.

When reputational injury is "not the necessary consequence" of the defendant's conduct, the plaintiff must plead his or her injury—and how the defendant caused it—in greater detail. *Browning*, 292 F.3d at 245 (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1310 (2d ed. 1990)).

For this reason too I would affirm the dismissal in its entirety.